UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAN COMMUNITY HEALTH, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>NEW JERSEY AIDS SERVICES, INC. D/B/A EDGE NEW JERSEY,<br><br>      Defendant. | Civ. No. 2:23-cv-22376 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

    Presently pending in this action for breach of contract is a motion by Defendant New Jersey Aids Services, Inc. D/B/A EDGE New Jersey ("EDGE" or "Defendant") to dismiss the Amended Complaint ("AC") pursuant to Fed. R. Civ. P. 12(b)(6) or for a more definite statement pursuant to Fed. R. Civ. P. 12(e). ECF No. 19. For the reasons below, Defendant's motion is **granted in part and denied in part.** Defendant's motion for a more definite statement is **denied.**

### I. BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff CAN Community Health, Inc. ("CAN" or "Plaintiff") is a Florida not-for-profit corporation providing care for those affected by HIV, AIDS, Hepatitis C, and other sexually transmitted diseases. AC ¶ 1, ECF No. 15. EDGE is a New Jersey not-for-profit corporation with similar goals to CAN. *Id.* On February 28, 2019, CAN and EDGE (the "Parties") entered into a Collaborative Agreement ("Agreement")[1] in February 2019 which details a cost-sharing partnership that includes:

    1) <u>Participation in the 340B Drug Pricing Program ("340B Program")</u>, which is a pharmacy savings program designed to improve and increase the administration of healthcare to low-income patients and to enable additional services - under Art. 2(d), CAN retained a 340B Administration Fee equaling 15% of the 340B savings, but CAN and EDGE (the "Parties") were to equally divide the savings acquired from the 340B Program ("340B Savings") net of the Administration Services Fee and certain other fees (the "Net 340B Savings"). *Id.* at Art. 2(f).

---

[1] All capitalized terms are as defined in the Agreement unless otherwise noted. *See* Agmt. *generally*, ECF No. 15-1.

1

2) "Build Out Advance" - the Parties planned to lease real estate space in or around Morris County, NJ and to build out the premises to make an operable medical office where services of both CAN and EDGE would be provided. AC ¶ 5. CAN would advance the cost to build out any space (the "Build Out Advance"). *Id.* at ¶ 8; Agreement Art. 3(a). Under Art. 3, repayment to CAN of the Build Out Advance was to occur by: "dividing the Net 340B Savings so that 20% of Net 340B Savings is utilized to repay the Build Out Advance and the remainder of the Net 340B Savings is divided equally between the Partners, until such time as the Build Out Advance is fully repaid." Art. 3(b), 2(e).

Upon the withdrawal of any Partner or dissolution of the partnership, the "balance, if any, of the Build Out Advance will become immediately due and payable." Art. 3(b). Art. 7(c) again clearly states that the Net 340B Savings collected prior to dissolution "shall" be "distributed first to repay any Build Out Advance and then in accordance with Article 2 hereof … .". The Agreement also provides that:

> (c) … To the extent that the Net 340B Savings are insufficient to repay the Build Out Advance pursuant to the foregoing distribution formula, then 50% of any remaining amount of the Build Out Advance will be added to the Building Buy-In Price, if any, and if there is no Building Buy-In Price remaining, forgiven by CAN. Notwithstanding the foregoing, if the Partnership Dissolution, Withdrawal or Termination is due to a breach of this Agreement by Partner Agency, then no amounts shall be forgiven by CAN.

*Id.* at Art. 7(c).

3) *Pro rata* lease payments - the Agreement provides that the Parties are to "bear its own expenses in the provision" of its services, "including each parties' pro-rata portion of any lease payment made by CAN" for the premises. Art. 2(a).

On October 16, 2020, CAN entered into a lease for premises located in Denville, New Jersey (the "Premises"). AC ¶ 27. CAN paid a total of $1,023,199.36 for the Build Out Advance in leasehold improvements to temporary and permanent space. *Id.* at ¶ 34. The landlord of the Premises agreed to pay $4,838,000 in construction and renovations costs, which were then amortized into CAN's rent, resulting in an annual rent of $796,500 ($66,375 monthly). *Id.* at ¶ 28. Due to EDGE's financial condition at that time, at EDGE's request, CAN accepted $3,000 monthly payments toward its share of the lease as a temporary concession; EDGE was to pay its full *pro rata* share of the lease at a later date when it had greater revenues. *Id.* at ¶¶ 30-32 (EDGE CEO email explaining that "until 340B revenues increase through the clinic," EDGE allocated $3000 a month for lease payments for FY20-21). During EDGE's occupancy of the Premises from May 11, 2021 to September 29, 2023, EDGE paid a total of $90,000 in rent which is less than its *pro rata* portion of the lease payments for the space it occupied. *Id.* at ¶¶ 29, 33. CAN has made lease payments of $1,207,777.05, *id.* at ¶ 41, and also advanced EDGE $177,769 for payment of invoices (the "Partnership Advance"). *Id.* at ¶ 35.

2

CAN claims that during the partnership, EDGE failed to pay the 340B Administration Fee and the Net 340B Savings. *Id.* at ¶ 36. Due to this purported breach, on May 31, 2023, CAN notified EDGE in writing of its withdrawal from the partnership, *id.* at ¶ 37, stating that its decision was made "in the best interest" of both Parties. Not. of Withdrawal,[2] Decl. of Laurie Litt ("Litt Decl.") Ex. E, ECF No. 19-2. On September 5, 2023, CAN made written demand to EDGE for immediate payment of all monies owed under the Agreement. *Id.* at ¶ 39. After EDGE vacated the Premises on about September 29, 2023, *Id.* at ¶ 38, it demanded removal of its signage from the Premises, but has refused to repay CAN for the removal or to make the other required payments under the Agreement. *Id.* at ¶¶ 40-41, 44.

In this action, CAN sues EDGE for amounts due under the Agreement including: 1) the 340B Administration Fee as required by Article 2(d); 2) the Net 340B Savings as required by Articles 2(f) and 3(b). Furthermore, CAN maintains that EDGE has still not paid: the Net 340B Savings to repay the Build Out Advance as required by Article 7(c); 50% of any remainder of the Build Out Advance after the Net 340B Savings are allocated as set forth in Articles 3(b) and 7(c); the Partnership Advance ($177,769.00) and the *pro rata* portion of lease payments made by CAN ($1,207,777.05) under Article 2(a); and the cost of the EDGE signage removal ($2,506.63). *Id.* at ¶¶ 54-55. Plaintiff seeks damages of more than $2 million. *Id.* at ¶ 43.

Defendant moves to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff cannot identify any contractual provisions that have been breached. In the alternative, Defendant seeks a more definitive statement pursuant to Fed. R. Civ. P. 12(e).

## II.   DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss Standard

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). Dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

---

[2] The Notice of Withdrawal is not attached to the Amended Complaint but is incorporated by reference. *See* AC ¶ 37.

3

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In ruling on a motion to dismiss, a court "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). Rather, a court is to rely on "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 426; *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("we may consider ... any matters incorporated by reference or integral to the claim" (internal quotations and citation omitted)).

B. Breach of Contract

1. *Lease Payments*

The Agreement requires Defendant to pay its "pro-rata" portion of the lease, *see* Art. 2(a), and notably, also requires that any amendment "must be in writing and signed by all of the Partners." Art.14.2. There is no dispute though that Defendant instead made monthly lease payments of $3,000 (which Plaintiff alleges is an amount less than Defendant's pro rata portion of the lease), which Plaintiff accepted. By doing so, Defendant insists that its rent obligation under the Agreement was modified and fulfilled.

"A modification can be proved by an explicit agreement to modify or by the actions and conduct of the parties as long as the intention to modify is mutual and clear." *See Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n*, 414 N.J. Super. 453, 466 (App. Div. 2010) (internal quotation marks and citation omitted)). CAN's acceptance of $3,000 alone is not such clear evidence of an intent to modify EDGE's rent obligations. *See Cnty. of Morris v. Fauver*, 153 N.J. 80, 101 (1998) (finding no modification of terms of contract and citing with approval other cases that have held that "mere acceptance by the [plaintiffs] for several years of payments in less amounts than they were entitled to under the lease does not evidence an intention on their part to modify the terms of the lease." (citations omitted)). Moreover, CAN alleges that the $3,000 was a temporary concession, which is supported by the email between the Parties' respective CEOs referenced in the Amended Complaint. *See* AC ¶¶ 30-31; *see also e.g.,* July 30, 2020 email from R. Carlisle to L. Litt, Litt Decl. Ex. B, ECF No. 19-2 ("CAN will develop a lease for [EDGE] that is less than what CAN will be required to pay and the difference will be accounted for and paid back to CAN by [EDGE] once the 340B machine gets rolling. How to pay back those differences

4

is already spelled out in our partnership agreement."). While "[t]he interpretation or construction of a contract is usually a legal question for the court, ... where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury." *Driscoll Const. Co. v. State, Dep't of Transp.*, 371 N.J. Super. 304, 314 (App. Div. 2004) (internal quotations and citation omitted). The Parties' conduct does not manifest a "mutual and clear" intent to modify the *pro rata* provision. Plaintiff has sufficiently stated a plausible claim that Defendant's rent obligation was not permanently modified to $3,000 per month.

Additionally, Defendant is also incorrect that Plaintiff fails to identify any contractual provision that obligates EDGE to pay 50% of rent payments made by CAN or to use Net 340B revenue to offset rent discrepancies. Plaintiff has alleged that Defendant is in breach of Art. 2(a), which provides that EDGE pay its "pro-rata portion." Whether EDGE's pro rata portion is 50% is taken as true for purposes of a motion to dismiss and need not be decided at this juncture. In addition, Plaintiff claims Defendant is in breach of Art. 7(c). Although Art. 7(c) addresses repayment of the Build Out Advance, on a motion to dismiss, the Court must accept as true CAN's allegation that rent on the Premises included the amortized cost of the Build Out Advance, which was to be repaid using Net 340B revenue and became "immediately due and payable" upon dissolution of the partnership. *See* Art. 3(b). Defendant's motion to dismiss claims regarding outstanding rent is **denied**.

### 2. *Forgiveness*

Art. 7(c) states that if "the Net 340B Savings are insufficient to repay the Build Out Advance," it is only "50% of any remaining amount of the Build Out Advance" that is forgiven if there is no Building Buy-In.[3] Since there was no Building Buy-In, Defendant summarily concludes the "*entire* remaining Build Out Advance is forgiven," Def. Reply at 11 (emphasis added), and that "*all* amounts owed in the event of dissolution" were forgiven under Art. 7(c). Def. Br. at 4 (emphasis added). However, given the express contract language,[4] Plaintiff has sufficiently alleged a breach of contract claim for 50% of any remainder of the Build Out Advance. In addition, the Agreement provides that there is no forgiveness of *any* amount if the termination of the Agreement is due to a breach, which Plaintiff has also sufficiently alleged.[5] Defendant's motion to dismiss claims related amounts owed for Net 340B Savings or Build Out costs is **denied.**

---

[3] The Parties do not dispute that there was no Building Buy-In Price as CAN did not purchase the Premises.

[4] Even if the contract is susceptible of more than one meaning, ambiguous terms cannot be decided at the motion to dismiss stage. *See In re Energy Future Holdings Corp.*, 585 B.R. 341, 348 (D. Del. 2018), *aff'd*, 773 F. App'x 89 (3d Cir. 2019) ("when the language of a contract is ambiguous, its construction presents a question of fact, which of course precludes summary dismissal." (internal quotation and citation omitted)).

[5] The failure to provide notice of breach is distinct from whether a breach actually occurred.

### 3. *Signage and Partnership Advance*

Plaintiff contends that Defendant's failure to repay the Partnership Advance of $177,769 and the $2,506.63 for removal of the EDGE signage is a breach of Art. 2(a), which requires each Parties to "bear its own expenses" for "Services" set forth in Art. 5 of the Agreement. "Services" generally relate to the provision of medical care. *See* Art. 5. Accordingly, the Partnership Advance and signage removal are not governed by Art. 2(a). Plaintiff's breach claim based on these allegations is **dismissed without prejudice.**

### C. Rule 12(e) Motion for More Definitive Statement

Alternatively, Defendant moves for a more definitive statement. Fed. R. Civ. P. 12(e) allows a party to "move for a more definite statement of a pleading" that is "so vague or ambiguous that the party cannot reasonably prepare a response." "Whether to grant a motion under Rule 12(e) is a matter committed largely to the discretion of the district court." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232 (D.N.J. 2003). A more definite statement is not warranted here. Plaintiff's AC is sufficiently detailed laying out the specific contractual provisions that it alleges Defendant to have breached. *See* discussion above. While Plaintiff does not allege the specific amount owed in Net 340B Savings, Defendant does not cite any authority that suggests that Rule 12(e) requires Plaintiff to do so. *See Beom Su Lee v. Karaoke*, No. 18-8633, 2019 WL 2537932, at *11 (D.N.J. June 19, 2019) ("[T]he function of Rule 12(e) is not 'to provide greater particularization of information alleged in the complaint,' but to address an unintelligible complaint." (quoting *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp.2d 729, 737 (D.N.J. 2008)). Nor is the AC so "vague or ambiguous" that Defendant cannot respond. *See Clark*, 213 F.R.D. at 232–33 (internal quotations omitted) ("The prevailing standard employed by district courts in this Circuit is to grant such a motion when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself."). Defendant's motion for a more definitive statement is **denied.**

## III. CONCLUSION

For the reasons noted above, Defendant's motion to dismiss is **granted in part and denied in part.** Defendant's motion for a more definite statement is **denied.** An appropriate Order follows.

Date: May 15, 2024

WILLIAM J. MARTINI, U.S.D.J.

6